2022-1021, 2022-1068, 2022-1078

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL
TRADE INVESTIGATIONS OR NEGOTATIONS,

> Plaintiff-Appellee,

v.

FONATINE INC., GOVERNMENT OF CANADA, MARCEL LAUZON INC.,
LES PRODUITS FORESTIERS D&G LTEE, NORTH AMERICAN FOREST
PRODUCTS LTD., PARENT-VIOLETTE GESTION LTEE, LE GROUPE
PARENT LTEE, SCIERE ALEXANDRE LEMAY & FILS INC.,
GOVERNMENT OF QUEBEC, MOBILIER RUSTIQUE (BEAUCE) INC.,
GOVERNMENT OF THE PROVINCE OF NEW BRUNSWICK,

> Plaintiffs-Appellants,

v.

UNITED STATES,

> Defendant.

_____

Appeal from the United States Court of International Trade
in Consol. Case No. 19-CV-00122-MAB, Chief Judge Mark A. Barnett.

_____

**BRIEF OF *AMICUS CURIAE*, THE UNITED STATES**

_____

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. McCARTHY
Director

CLAUDIA BURKE
Assistant Director

OF COUNSEL:                          ELIZABETH ANNE SPECK
NIKKI KALBING                        Senior Trial Counsel
Assistant Chief Counsel              Department of Justice, Civil Division
Office of the Chief Counsel          Commercial Litigation Branch
   for Trade Enforcement          PO Box 480, Ben Franklin Station
   & Compliance                   Washington, DC 20044
U.S. Department of Commerce          Tel: (202) 307-0369
Washington, DC 20230                 Email: elizabeth.speck@usdoj.gov

February 7, 2023                     Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. ii

STATEMENT ...................................................................................2

    I.    Domestic Statutory And Regulatory Background ...........................2

        A.    Exclusion From A CVD Investigation Before The URAA .......2

        B.    The Uruguay Round Agreements Act And CVD Investigations .....................................................................3

        C.    The Expedited-Review Regulation ......................................7

        D.    The URAA And Antidumping Investigations ........................8

    II.    This Administrative Proceeding .....................................................9

    III.    Proceedings At The Court Of International Trade ..........................11

    IV.    Proceedings In This Court ...........................................................13

ARGUMENT ..................................................................................13

    I.    Commerce Has Statutory Authority To Adopt An Expedited Review Procedure In Countervailing Duty Investigations ..........................13

        A.    Commerce Had Preexisting Authority For The Regulation ....13

        B.    Section 3513(a) Confers Authority .....................................16

    II.    Commerce's Interpretation Of Article 19.3 Of The SCM Agreement Is Correct ..................................................................................24

CONCLUSION ...............................................................................26

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Agro Dutch Industries Ltd. v. United States*,
  508 F.3d 1024 (Fed. Cir. 2007) ............................................................22, 23

*Albemarle Corp. v. United States*,
  821 F.3d 1345 (Fed. Cir. 2016) ........................................................... 8, 24

*Ambassador Div. of Florsheim Shoe v. United States*,
  748 F.2d 1560 (Fed. Cir. 1984) ................................................................22

*Barnhart v. Peabody Coal*,
  537 U.S. 149 (2003) ................................................................................19

*Chevron U.S.A. Inc. v. Echazabal*,
  536 U.S. 73 (2002) ..................................................................................23

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
  483 F. Supp. 3d 1253 (Ct. Int'l Trade 2020) ......................................... passim

*Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*,
  535 F. Supp. 3d 1336 (Ct. Int'l Trade 2021) ...............................................13

*Corus Staal BV v. Dep't of Commerce*,
  395 F.3d 1343 (Fed. Cir. 2005) ...............................................................25

*Exxon Corp. v. Phillips Petroleum Co.*,
  265 F.3d 1249 (Fed. Cir. 2001) ...............................................................18

*FAG Italia SpA v. United States*,
  291 F.3d 806 (Fed. Cir. 2002) .............................................................21, 22

*Louisiana Pub. Serv. Comm'n v. FCC*,
  476 U.S. 355 (1986) ................................................................................20

*Marx v. General Revenue Corp.*,
  568 U.S. 371 (2013) ...................................................................23

*Melamine Chems., Inc. v. United States*,
  732 F.2d 924 (Fed. Cir. 1984) ............................................14, 21

*Mellouli v. Lynch*,
  575 U.S. 798 (2015) ...................................................................20

*Mobile Communications Corp. of America v. FCC*,
  77 F.3d 1399 (D.C. Cir. 1996)....................................................22

*M'Culloch v. Maryland*,
  17 U.S. 316 (1819) .....................................................................16

*Smith Corona Group v. United States*,
  713 F.2d 1568 (Fed. Cir. 1983) ............................................14, 22

*Sturgeon v. Frost*,
  577 U.S. 424 (2016) ...................................................................20

*United States v. Comstock*,
  560 U.S. 126 (2010) ...................................................................16

*Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*,
  435 U.S. 519 (1978) .............................................................18, 21

## STATUTES

19 U.S.C. § 1671d(c).............................................................11, 17
19 U.S.C. § 1671d(c)(1)(B)............................................................5
19 U.S.C. § 1671d(c)(5)(A)............................................................5
19 U.S.C. § 1671d(c)(5)(B)............................................................5
19 U.S.C. § 1671e(a)....................................................................15
19 U.S.C. § 1673b(d) .....................................................................8
19 U.S.C. § 1673e(c)(1)(C) ........................................................9, 24
19 U.S.C. § 1675 ..........................................................................22
19 U.S.C. § 1675(a) ......................................................................11
19 U.S.C. § 1675(a)(2)(B)............................................................18
19 U.S.C. § 1675(a)(4) .................................................................22

19 U.S.C. § 1675(b) ................................................................11, 18

19 U.S.C. § 1675a(c)(2) ...................................................................23

19 U.S.C. § 1677f-1(c)(2)(a) ...........................................................8

19 U.S.C. § 1677f-1(e) ....................................................................11

19 U.S.C. § 1677f-1(e)(1) ...............................................4, 5, 6, 17

19 U.S.C. § 1677f-1(e)(2) .........................................................5, 17

19 U.S.C. §1677f-1(e)(2)(A) .....................................................5, 17

19 U.S.C. §1677f-1(e)(2)(B) ...........................................................17

19 U.S.C. § 2504(b) ....................................................................3, 14

19 U.S.C. § 2903(a)(1) ..............................................................4, 25

19 U.S.C. § 3511 ..............................................................................11

19 U.S.C. § 3511(a) .........................................................................16

19 U.S.C. § 3511(a)(1)(a) ...........................................................2, 5

19 U.S.C. § 3511(a)(2) ...........................................................2, 5, 16

19 U.S.C. § 3511(d) ...........................................................................2

19 U.S.C. § 3511(d)(12) ..................................................................16

19 U.S.C. § 3512(d) ...........................................................5, 16, 25

19 U.S.C. § 3513(a) ...................................................................passim

19 U.S.C. § 3513(a)(2) ..............................................................passim

19 U.S.C. § 3513(b) ...................................................................passim

## **REGULATIONS**

19 C.F.R. § 315.214(*l*) ......................................................................2

19 C.F.R. § 315.214(*l*)(1) ................................................................7

19 C.F.R. § 351.214(k) ............................................................passim

19 C.F.R. § 351.214(k)(1) ................................................................9

19 C.F.R. § 351.214(k)(1)(i)-(iii) ....................................................7

19 C.F.R. § 351.215 ....................................................................9, 24

19 C.F.R. § 353.45 (1986) .........................................................3, 15

19 C.F.R. § 355.14(b) (1989) ...........................................................3

19 C.F.R. § 355.38 (1981) .........................................................3, 15

## ADMINISTRATIVE DETERMINATIONS

*Antidumping Duties; Countervailing Duties*,
    61 Fed. Reg. 7,308 (Dep't of Commerce Feb. 27, 1996)...............................7

*Antidumping Duties; Countervailing Duties*,
    62 Fed. Reg. 27,296 (Dep't of Commerce May 19, 1997)................. 2, 7, 8, 25

*Final Results and Partial Recission of Countervailing Duty Expedited Reviews:
Certain Softwood Lumber Products from Canada*,
    67 Fed. Reg. 67,388 (Dep't of Commerce Nov. 5, 2002) ..............................8

*Final Results, Reinstatement, Partial Recission of Countervailing Duty Expedited
Reviews, and Company Exclusions; Certain Softwood Lumber Products from
Canada*,
    69 Fed. Reg. 10,982 (Dep't of Commerce Mar. 9, 2004) ..............................8

*Final Results and Partial Recission of Countervailing Duty Expedited Reviews:
Certain Softwood Lumber Products from Canada*,
    69 Fed. Reg. 10,985 (Dep't of Commerce Mar. 9, 2004) ..............................8

*Final Results of Countervailing Duty Expedited Review: Hard Red Spring Wheat
from Canada*,
    70 Fed. Reg. 3,680 (Dep't of Commerce Jan. 26, 2005)...............................8

*Supercalendered Paper from Canada: Final Results of the Countervailing
Expedited Review*,
    82 Fed. Reg. 18,896 (Dep't of Commerce Apr. 24, 2017).............................8

*Certain Carbon and Alloy Steel Cut-to-Length Plate From the People's Republic
of China: Final Results of Countervailing Duty Expedited Review*,
    83 Fed. Reg. 34,115 (Dep't of Commerce July 19, 2018).............................8

*Certain Softwood Lumber Products from Canada: Final Results of Countervailing
Duty Expedited Review*,
    84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019) ......................... 8, 10

*Regulations To Improve Administration and Enforcement of Antidumping and
Countervailing Duty Laws*,
    86 Fed. Reg. 52,300, 52,373 (Sept. 20, 2021)...............................................2

S. Rep. 96-249, S. Rep. No. 249, reprinted in 1979 U.S.C.C.A.N. 381, 6813, 14, 16

Pub. L. No. 103-465, 108 Stat. 4809 (1994) ................................................. 3, 25

H.R. Rep. No. 103-316, 103rd Cong., 2d Sess. (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040 ............................................................................. 5, 6, 19

2022-1021, 2022-1068, 2022-1078

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL
TRADE INVESTIGATIONS OR NEGOTATIONS,

Plaintiff-Appellee,

v.

FONATINE INC., GOVERNMENT OF CANADA, MARCEL LAUZON INC.,
LES PRODUITS FORESTIERS D&G LTEE, NORTH AMERICAN FOREST
PRODUCTS LTD., PARENT-VIOLETTE GESTION LTEE, LE GROUPE
PARENT LTEE, SCIERE ALEXANDRE LEMAY & FILS INC.,
GOVERNMENT OF QUEBEC, MOBILIER RUSTIQUE (BEAUCE) INC.,
GOVERNMENT OF THE PROVINCE OF NEW BRUNSWICK,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant.

.

Appeal from the United States Court of International Trade
in Consol. Case No. 19-CV-00122-MAB, Chief Judge Mark A. Barnett.

**BRIEF OF *AMICUS CURIAE*, THE UNITED STATES**

The United States respectfully submits this *amicus* brief pursuant to the

Court's order of June 10, 2022, requesting the Government's views on at least the

following two issues: (1) "[w]hether [the Department of Commerce (Commerce)]

had the authority to adopt § 351.214(k) pursuant to 19 U.S.C. § 3513(a)(2)," in view of 19 U.S.C. § 3511(a)(2), 19 U.S.C. §§ 3511(a)(1)(a) and (d), and "any other legal authority relating to the Uruguay Round Agreements Act (URAA) or the Uruguay Round Agreements;" and (2) "[w]hether Commerce's interpretation of the requirements in Article 19.3 of the Agreement on Subsidies and Countervailing Measures [SCM Agreement)], reflected in the publication of § 351.214(k), *see Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,318 (May 19, 1997), is correct."  As we explain below, the answer to both questions is yes.[1]

## STATEMENT

## I.    Domestic Statutory And Regulatory Background

### A.    Exclusion From A CVD Investigation Before The URAA

This case is about Commerce's statutory authority to conduct expedited reviews in countervailing duty (CVD) proceedings.  Countervailing duties are applied to foreign exporters and producers to offset government subsidies.  Before Congress enacted the Uruguay Round Agreements Act in 1994, Commerce was not required to calculate individual subsidy rates for each company in an

---

[1] After the Court's order, section 351.214(k) was redesignated as 19 C.F.R. § 315.214(*l*).  *See* 86 Fed. Reg. 52,300, 52,373 (Sept. 20, 2021).  This brief will continue to refer to section 351.214(k) for clarity and consistency with the briefs and prior proceedings in this case.

investigation—only country-wide rates.  Companies that believed they did not

benefit from a subsidy could ask to be excluded from the proceeding.  Congress

authorized such regulations in the provision now codified at 19 U.S.C. § 2504(b),

which authorizes "[r]egulations necessary or appropriate to carry out actions

proposed in *any* statement of proposed administrative action submitted to the

Congress."  The Statement of Administrative Action accompanying the Trade

Agreements Act of 1979 directed Commerce to promulgate a regulation

establishing an exclusion mechanism, which it did in 1980.  *See* Statement of

Administrative Action, S. Rep. 96-249, S. Rep. No. 249, reprinted at 1979

U.S.C.C.A.N. 381, 681; 19 C.F.R. § 355.38 (1981).  This regulation allowed

Commerce to exclude companies that satisfied certain requirements; it essentially

remained the same throughout other changes to the CVD law.  19 C.F.R. §

355.14(b) (1989) (adding certification requirements).  The Commerce regulation

covering antidumping duty investigations was similar.  19 C.F.R. § 353.45 (1986).

## B.    The Uruguay Round Agreements Act And CVD Investigations

In the URAA, Congress implemented a host of agreements that arose from

the Uruguay Round of international trade negotiations.  Uruguay Round

Agreements Act (URAA), Pub. L. No. 103-465, 108 Stat. 4809 (1994).  Those

3

agreements have no legal effect in the United States except insofar as they have been implemented into United States law. 19 U.S.C. § 2903(a)(1).

One of those agreements was the World Trade Organization (WTO) SCM Agreement. The SCM Agreement contains the current international legal framework for the imposition of countervailing duties. Relevant to this appeal, the SCM Agreement anticipated that member countries generally would provide expedited reviews to companies that were not individually examined. Article 19.3 provides that:

> [a]ny exporter whose exports are subject to a definitive countervailing duty but who was not actually investigated for reasons other than a refusal to cooperate, shall be entitled to an expedited review in order that the investigating authorities promptly establish an individual countervailing duty rate for that exporter.

SCM Agreement Art. 19.3.

The URAA establishes procedures governing the imposition of countervailing duties generally, in light of the SCM Agreement. *See, e.g.*, URAA § 264, 108 Stat. at 4,912-14; URAA § 269(a), 108 Stat. at 4916. It eliminates the preference for country-wide rates, and instead establishes a requirement that Commerce "shall determine an individual countervailable subsidy rate for each known exporter" of unfairly subsidized merchandise, 19 U.S.C. § 1677f-1(e)(1), unless Commerce "determines" that the "large number of exporters or producers

4

involved in the investigation" would render an individualized determination impracticable, *id.* § 1677f-1(e)(2). In such circumstances, Commerce may "determine individual . . . rates for a reasonable number of exporters," *id.* § 1677f-1(e)(2)(A), and apply a blanket "all-others" rate to exporters who were not individually examined, *id.* § 1671d(c)(1)(B), (c)(5)(A), or determine "a single country-wide subsidy rate [to be] applied to all exporters and producers." *Id.* at (c)(5)(B).

The URAA "approves" the "statement of administrative action proposed to implement" the Uruguay Round Agreements that President Clinton "submitted to the Congress on September 27, 1994." *Id.* § 3511(a)(2); *see generally* Statement of Administrative Action (SAA), H.R. Rep. No. 103-316, 103rd Cong., 2d Sess. (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040. That statement sets forth various changes to domestic law that were deemed necessary to bring the United States into compliance with the Uruguay Round Agreements. Although the statement does not have the force of law, the URAA provides that the statement "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and [the URAA] in any judicial proceeding." *Id.* § 3512(d).

5

The statement recognizes that, under Article 19.3 of the SCM Agreement, an "exporter . . . subject" to a countervailing-duty order that "was not actually investigated for reasons other than a refusal to cooperate[] shall be entitled to an expedited review to establish an individual" rate of duty "for that exporter." SAA, 1994 U.S.C.C.A.N. at 4250. Although the statement likewise does not expressly call for the creation of such procedures, it recognizes that "[s]everal changes must be made" to existing tariff laws "to implement the requirements of Article 19.3." *Id.* at 4251. The statement then proposes the alterations to the existing countervailing-duty scheme that the URAA ultimately adopted. *Id.* As noted, those actions include establishing a "general rule in favor of individual [countervailing-duty] rates for each exporter . . . individually investigated." *Id.* They also include granting Commerce discretion to determine either (1) a single country-wide rate for all exporters, or (2) individual rates for investigated exporters and an all-others rate for uninvestigated exporters. *Id.*

The URAA authorizes "appropriate officers of the United States Government" to "issue such regulations[] as may be necessary to ensure that any provision of this Act [the URAA] . . . that takes effect on the date any of the Uruguay Round Agreements enters into force with respect to the United States is appropriately implemented on such date." 19 U.S.C. § 3513(a)(2). The URAA

6

separately authorizes the issuance of "[a]ny interim regulation necessary or appropriate to carry out any action proposed in the statement of administrative action." *Id.* § 3513(b).

### C.    The Expedited-Review Regulation

In 1997, Commerce issued a final rule establishing, among other things, an expedited-review procedure for certain exporters not individually examined in countervailing duty investigations. 62 Fed. Reg. 27,296, 27,396 (Dep't of Commerce May 19, 1997); *see* 19 C.F.R. § 351.214(k).  Commerce adopted this procedure "[t]o implement Article 19.3 of the SCM Agreement."  61 Fed. Reg. 7,308, 7,318 (Dep't of Commerce Feb. 27, 1996) (notice of proposed rulemaking). The procedure permits an exporter not selected "for individual examination" or accepted "as a voluntary respondent" in certain countervailing-duty investigations to "request a review . . . within 30 days" of the publication of a countervailing-duty order.  19 C.F.R. § 351.214(k)(1).  To qualify for such review, the exporter must certify that it has complied with certain requirements. *Id.* § 351.214(k)(1)(i)-(iii).

Commerce promulgated the regulation adopting this expedited-review procedure after notice and comment. *See* 62 Fed. Reg. at 27,396.  The preamble to the final rule does not indicate that any commenter challenged Commerce's statutory authority to adopt such procedure in the countervailing-duty context. *See*

*id.* at 27,321-22 (summarizing comments received). Since issuing the rule, Commerce has conducted expedited-reviews in five proceedings, including the one at issue in this case.[2]

### D.    The URAA And Antidumping Investigations

The WTO Antidumping Agreement is another of the WTO agreements implemented in the URAA. Congress also applies the "all others rate" scheme to antidumping investigations. 19 U.S.C. §§ 1677f-1(c)(2)(a); 1673b(d). Since 1994, Commerce has also used this basic framework for administrative reviews, even though the statute speaks only about investigations. *See, e.g., Albemarle Corp. v. United States*, 821 F.3d 1345, 1352 (Fed. Cir. 2016) (stating that "the

---

[2] *See Final Results and Partial Recission of Countervailing Duty Expedited Reviews: Certain Softwood Lumber Products from Canada*, 67 Fed. Reg. 67,388 (Dep't of Commerce Nov. 5, 2002); *Final Results, Reinstatement, Partial Recission of Countervailing Duty Expedited Reviews, and Company Exclusions; Certain Softwood Lumber Products from Canada*, 69 Fed. Reg. 10,982 (Dep't of Commerce Mar. 9, 2004); *See Final Results and Partial Recission of Countervailing Duty Expedited Reviews: Certain Softwood Lumber Products from Canada*, 69 Fed. Reg. 10,985 (Dep't of Commerce Mar. 9, 2004); *Final Results of Countervailing Duty Expedited Review: Hard Red Spring Wheat from Canada*, 70 Fed. Reg. 3,680 (Dep't of Commerce Jan. 26, 2005); *Supercalendered Paper from Canada: Final Results of the Countervailing Expedited Review*, 82 Fed. Reg. 18,896 (Dep't of Commerce Apr. 24, 2017); *Certain Carbon and Alloy Steel Cut-to-Length Plate From the People's Republic of China: Final Results of Countervailing Duty Expedited Review*, 83 Fed. Reg. 34,115 (Dep't of Commerce July 19, 2018); and *Certain Softwood Lumber Products from Canada: Final Results of Countervailing Duty Expedited Review*, 84 Fed. Reg. 32,121 (Dep't of Commerce July 5, 2019).

statutory framework contemplates that Commerce will employ the same methods for calculating a separate rate in periodic administrative reviews as it does in initial investigations," notwithstanding the statute's discussion of only investigations).

The URAA also includes a provision allowing Commerce to accept security instead of cash deposits if Commerce is "satisfied that a [preliminary affirmative antidumping duty] determination will be made, within 90 days after the date of publication of an order" on the basis of information presented to Commerce "in such form and within such time as" Commerce may require.  19 U.S.C. §1673e(c)(1)(C).  No similar provision was included for CVD investigations.

Commerce also issued a rule establishing procedures for expedited reviews in antidumping duty investigations.  19 C.F.R. § 351.215, referencing the security provision in section 1673e.

## II.    This Administrative Proceeding

In 2018, Commerce published a countervailing duty order covering softwood lumber from Canada.  *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 483 F. Supp. 3d 1253, 1260 (Ct. Int'l Trade 2020) (*COALITION I*).  In response to certain Canadian parties' requests, Commerce initiated an expedited review under 19 C.F.R. § 351.214(k).  *Id.* (citing *Certain Softwood Lumber Products from Canada,* 84 Fed. Reg. 32,121 (Dep't of

9

Commerce July 5, 2019) (final results of expedited review) (Final Results)).  In its decision, Commerce explained that it had promulgated the regulation under the authority conferred by section 103(a) of the URAA, 19 U.S.C. § 3513(a).  *See id.* at 1260-61 (citations omitted).

Commerce also noted that Article 19.3 of the SCM Agreement provides for expedited reviews of non-investigated exporters or producers in countervailing duty proceedings, and that the SAA accompanying the URAA states that Article 19.3 of the Subsidies Agreement provides that cooperating exporters whose exports are subject to a countervailing duty order, but who were not actually investigated, shall be entitled to expedited reviews. *COALITION I*, 483 F. Supp. 3d at 1261. Commerce reasoned that, under 19 U.S.C. § 3513(a)'s regulatory authority, Congress had delegated authority to promulgate regulations consistent with the SAA.

After determining that it possessed authority to conduct expedited reviews, Commerce found that, among the eight examined companies, three had above-*de minimis* subsidy rates and were entitled to individual countervailing duty deposit rates, and five had *de minimis* subsidy rates and thus excluded those respondents from the order. *Final Results*, 84 Fed. Reg. at 32,121.

10

### III.    Proceedings At The Court Of International Trade

The domestic petitioner sued, contending that Commerce had lacked the authority to conduct the expedited countervailing duty review. The trial court agreed, holding that Commerce had exceeded its rulemaking authority by promulgating the expedited review regulation. *COALITION I*, 483 F. Supp. 3d at 1267. The trial court reasoned that section 3513(a) authorizes only "limited rulemaking authority," and that the absence of any URAA provision explicitly authorizing expedited reviews means Commerce lacks the authority to conduct such reviews. *Id.* at 1266-67. The court further held that, because the SAA does not propose any actions for the implementation of expedited reviews, the SAA does not indicate a legislative intent that Commerce conduct expedited reviews. *Id.*

The United States and Canadian Parties had cited several other potential authorities for Commerce's administration of expedited countervailing duty reviews, including 19 U.S.C. §§ 1671d(c), 1675(a), 1675(b), 1677f-1(e), 3511, and 3513(b); and Commerce's inherent authority to reconsider previously closed proceedings — in this case, the countervailing duty investigation. Rather than addressing these alternatives in the first instance, the trial court remanded for Commerce to: (1) reconsider the statutory basis for section 351.214(k); or (2) take

action in conformity with the trial court's opinion. *COALITION I*, 483 F. Supp. 3d at 1273. With respect to 19 U.S.C. § 3513(b), however, which allows "interim regulation[s] necessary or appropriate to carry out any action proposed in the [SAA]," the trial court held that, because the SAA does not discuss the implementation of expedited countervailing duty reviews, that subsection did not authorize Commerce's expedited review regulation. *COALITION I*, 483 F. Supp. 3d at 1267 (citation omitted).

On remand, Commerce reconsidered its prior interpretations and assumed for argument's sake the trial court's holding that 19 U.S.C. § 3513(a) does not confer authority to conduct expedited reviews or to promulgate 19 C.F.R. § 351.214(k). Appx556, Appx570. But Commerce was careful to reaffirm that it still believes the section "grants the agency the authority, whether it be implicit or explicit, to conduct CVD expedited reviews, because the SAA indicates Congressional intent that Commerce conduct CVD expedited reviews even if it does not specifically discuss the mechanics for implementing such reviews." Appx570. Commerce also considered the alternative bases for authority and concluded that these other authorities do not explicitly authorize expedited reviews. Appx556-558, Appx565-571. The trial court sustained the remand results. *Comm. Overseeing Action for Lumber Int'l Trade Investigations or*

12

*Negots. v. United States*, 535 F. Supp. 3d 1336 (Ct. Int'l Trade 2021) (*COALITION II*).

## IV.    Proceedings In This Court

The Canadian parties appealed the trial court's judgment, and this Court consolidated the appeals into consolidated appeal number 22-1068. The Government did not appeal and did not participate in the case as an appellee. Oral argument was held on June 8, 2022. Following the oral argument, the Court issued its order inviting the Government to submit this *amicus* brief.

## ARGUMENT

## I.    Commerce Has Statutory Authority To Adopt An Expedited Review Procedure In Countervailing Duty Investigations

The preexisting statutory structure provided Commerce with the authority to simply update its regulation after the URAA. Even if that preexisting structure had not existed, the URAA itself, read together with the SAA's statements, provided authority for section 351.214(k).

### A.    Commerce Had Preexisting Authority For The Regulation

The 1979 Trade Agreements Act and accompanying SAA indicated that exclusions would be offered to exporters in the countervailing-duty context and that procedures for such exclusions would be created by Commerce in regulations. Specifically, the SAA accompanying the Trade Agreements Act of 1979 directed

13

Commerce to promulgate a regulation establishing an exclusion mechanism. *See* Statement of Administrative Action, S. Rep. 96-249, S. Rep. No. 249, reprinted at 1979 U.S.C.C.A.N. 381, 681 ("[i]ndividual firms that do not benefit from a subsidy found to have been granted to other firms producing or exporting the merchandise subject to the investigation, may be excluded from a countervailing duty order. (Regulation)."); *id.* at 666 ("In administering the new legislation, regulations will be promulgated. . . . This statement indicates where a certain administrative practice is intended, as well as summarizing the key provisions of the statute and regulations that will be proposed under it."). Congress authorized such regulations in the provision now codified at 19 U.S.C. § 2504(b), which authorizes "[r]egulations necessary or appropriate to carry out actions proposed in *any* statement of proposed administrative action submitted to the Congress." (Emphasis added). That broad grant of authority recognized that Congress need not explicitly legislate the "daily management of our international trade relations, including much of what may be considered administrivia," but rather was entrusting Commerce with "broad discretion in executing the law." *Melamine Chems., Inc. v. United States*, 732 F.2d 924, 930 (Fed. Cir. 1984) (quoting *Smith Corona Group v. United States*, 713 F.2d 1568, 1582 (Fed. Cir. 1983).

14

Commerce promulgated such a regulation allowing it to exclude companies that satisfied the requirements. 19 C.F.R. § 355.38 (1981). The regulation remained the same throughout changes to the statute until the URAA, including a change in 1984 that expressed a preference for country-wide rates, but that expressly preserved the agency's authority to impose individualized rates where "the administering authority determines there is a significant differential between companies receiving subsidy benefits." 19 U.S.C. § 1671e(a) (1984); 19 C.F.R. § 355.14(b) (1989) (adding certification requirements). The Commerce regulation covering antidumping duty investigations was similar. 19 C.F.R. § 353.45 (1986).

To implement the SCM Agreement and the many other Uruguay Round agreements, Congress had to overhaul much, but not all, of the antidumping and countervailing duty law. The existing regulations had already allowed Commerce to exclude companies that satisfied the requirements. An expedited review is admittedly different in process from an exclusion, but similar in effect—the requesting company is not subject to the order if it can demonstrate it did not receive the government benefit. Therefore, Commerce reasonably conformed its previous procedures (providing relief to non-investigated companies), with the URAA.

## B.    Section 3513(a) Confers Authority

As Commerce's decision on remand explains, the agency has "consistently interpreted" 19 U.S.C. § 3513(a)(2) "to grant the agency . . . authority . . . to conduct . . . expedited reviews."  Appx570.  That interpretation is correct.

The URAA's grant of regulatory authority is broad and unambiguous. Commerce may "issue such regulations[] as may be necessary to . . . appropriately implement" the URAA's provisions.  19 U.S.C. § 3513(a)(2).  As the Supreme Court has made clear in various contexts, the terms "necessary" and "appropriate" are exceptionally broad and require only that the means be rationally tailored to a legitimate end.  *See United States v. Comstock*, 560 U.S. 126, 134 (2010); *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413, 418, 421 (1819).  Here, Congress made plain that the URAA's ends include the implementation of the SCM Agreement, which Congress expressly "approve[d]" by name.  19 U.S.C. § 3511(a), (d)(12).  And the expedited-review procedures are plainly tailored to that end.  The URAA expressly "approve[d]" the SAA, 19 U.S.C. § 3511(a)(2), and deemed it to be an "authoritative" interpretation of the SCM Agreement, 19 U.S.C. § 3512(d).  The SAA, in turn, recognizes that, in certain circumstances, the SCM Agreement requires individualized "expedited review" to be available.  1994 U.S.C.C.A.N. at 4250.  It follows that the expedited-review regulation is rationally

16

tailored to implement the URAA's approval of the SCM Agreement, as definitively interpreted by the SAA. Nothing more is required by section 3513(a)(2).

Even putting the SAA aside, the regulation appropriately implements the URAA's provisions establishing general procedures for imposing countervailing duties. *See, e.g.*, URAA § 264, 108 Stat. at 4912-14; URAA § 269(a), 108 Stat. at 4916. Those procedures, among other things, establish a presumption in favor of individualized rates: Commerce "shall determine an individual countervailable subsidy rate for each known exporter" of unfairly subsidized merchandise, 19 U.S.C. § 1677f-1(e)(1), unless Commerce "determines" that the "large number of exporters or producers" involved in the investigation" would render an individualized determination impracticable. *Id.* § 1677f-1(e)(2). In investigations of that sort, Commerce may "determine individual . . . rates for a reasonable number of exporters," *id.* at § 1677f-1(e)(2)(A), and apply a blanket "all-others" rate to exporters who were not individually examined. *Id.* § 1671d(c)(1)(B). Alternatively, Commerce may "determine a single country-wide subsidy rate to be applied to all exporters and producers." *Id.* § 1677f-1(e)(2)(B). Commerce's express statutory authority to issue regulations "necessary to . . . appropriately implement" this countervailing-duty scheme reasonably includes the discretion to

17

specify that exporters who did not initially receive an individualized rate in an investigation may request one on an expedited basis.

The longstanding principle of administrative law that "the formulation of procedures [is] basically to be left within the discretion of the agencies to which Congress ha[s] confided the responsibility for substantive judgments" underscores this interpretation. *Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978); *see also, e.g.*, *Exxon Corp. v. Phillips Petroleum Co.*, 265 F.3d 1249, 1252-53 (Fed. Cir. 2001) (holding that "the formulation of procedures is within the administrative discretion of the agency" where "no statutory or regulatory restraint" forbids the adopted procedure). Given the URAA's presumption in favor of individualized rates, expedited review is appropriately treated as a procedural mechanism to further the goal of individualized reviews. That the URAA effectively requires individualized review for new exporters and producers, 19 U.S.C. § 1675(a)(2)(B), as well as upon a showing of changed circumstances, 19 U.S.C. § 1675(b), underscores the fact that "expedited review" is simply a procedural variant of authority that Congress already has granted Commerce to set individualized rates.

Moreover, the structure of the URAA reinforces the conclusion that Commerce had statutory authority to issue § 351.214(k). As noted, the SAA

recognizes that, under Article 19.3, an "exporter . . . subject" to a countervailing duty order "but which was not actually investigated for reasons other than a refusal to cooperate[] shall be entitled to an expedited review to establish an individual" duty "rate for that exporter." 1994 U.S.C.C.A.N. at 4250. Although the statement does not expressly call for the creation of such procedures, it recognizes that "[s]everal changes must be made" to existing tariff laws "to implement the requirements of Article 19.3." *Id.* at 4251. Given that, Congress's authorization of "*any* interim regulation necessary or appropriate to carry out *any* action proposed in the statement of administrative action," 19 U.S.C. § 3513(b) (emphasis added), encompasses expedited-review procedures. And if Congress conferred statutory authority on Commerce to adopt interim expedited-review regulations, it is difficult to imagine why Congress would have intended to *prohibit* Commerce from adopting final expedited-review regulations under § 3513(a)(2). *Cf. Barnhart v. Peabody Coal*, 537 U.S. 149, 160 (2003) (holding that "we do not readily infer congressional intent to limit an agency's power to get a mandatory job done merely from a specification to act by a certain time," even if the agency misses the statutory deadline).[3]

---

[3] The challenged regulation is not an "interim regulation," 62 Fed. Reg. at 27,296, so section 3513(b) does not directly authorize its promulgation. That provision nonetheless informs the scope of Commerce's authority under section 3513(a).

Given the statutory scheme, it is unsurprising that no commenter appears to have contested Commerce's statutory authority to adopt § 351.214(k) when it was promulgated more than two decades ago. And, as noted *supra* at 13-14, Commerce's preexisting regulations shared a similar purpose with § 351.214(k) in that they both examined the degree to which respondents not individually investigated, received subsidies. It was rational for Commerce to modify its existing procedures to implement the expedited review process to conform to the URAA.

In reaching a contrary conclusion, the trial court relied principally on the fact that the URAA does not expressly authorize an expedited-review procedure's creation. *Committee Overseeing Action for Lumber Int'l Trade Investigations or Negotiations v. United States*, 483 F. Supp. 3d 1253, 1265 (Ct. Int'l Trade 2020). But the court did not substantively address the textual argument set forth above; it simply relied on the uncontroversial proposition that an agency "has no power to act . . . unless and until Congress confers power upon it." *Id.* (quoting *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). That principle has no

_____

*See, e.g.*, *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *Mellouli v. Lynch*, 575 U.S. 798, 809 (2015) ("Statutes should be interpreted as a symmetrical and coherent regulatory scheme." (internal quotation marks omitted).

application here.  As discussed, Congress *did* provide Commerce with authority to issue regulations "necessary to . . . appropriately implement" the URAA.  19 U.S.C. § 3513(a)(2).  *See supra* at 6.  And the trial court's belief that specific grants of statutory authority are necessary to authorize every procedure is contrary to foundational principles of administrative law.  *See Vermont Yankee,* 435 U.S. at 524.  Indeed, the court's interpretation could render section 3513(a) superfluous.  *See COALITION I*, 483 F. Supp. 3d at 1267 ("[T]he [rulemaking] provision authorizes actions otherwise provided for in the URAA.").  If Congress needed to individually grant each agency authorization to adopt particular procedures, it is hard to see what the general grant of authority would accomplish.  *See Melamine Chems.*, 732 F.2d at 930 ("[T]here is no stultifying requirement that [an agency] cite a statute detailing *in haec verba* the specific action it may take when confronted with a particular set of circumstances among the myriad that may occur.").

In this respect, the authority in section 3513(a) answers the problem facing the Court in *FAG Italia SpA v. United States*, 291 F.3d 806 (Fed. Cir. 2002).  There, the Court held that "the absence of a statutory prohibition cannot be the source of agency authority."  *Id.* at 816.  But the Court took pains to note that regulatory authority not supplied by specific provisions may nevertheless be found

21

in "more general provisions." *See id.* at 819. Thus, the Court explained that its holding was "quite consistent" with prior cases upholding agency action where "the agency had general authority to act" under the relevant statute. *Id.* at 818 n.18 (citing *Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560 (Fed. Cir. 1984); *Smith–Corona Grp. v. United States*, 713 F.2d 1568 (Fed. Cir. 1983); and *Mobile Communications Corp. of America v. FCC*, 77 F.3d 1399 (D.C. Cir. 1996)). Section 3513(a) is just such a "general provision" that provides Commerce with "general authority" to appropriately implement the URAA, including by establishing procedures for expedited reviews.

Similarly, the Court's decision in *Agro Dutch Industries Ltd. v. United States*, 508 F.3d 1024 (Fed. Cir. 2007), actually underscores the lawfulness of the regulation at issue. *Agro Dutch* involved 19 U.S.C. § 1675, which (as relevant here) provides for two forms of review of antidumping orders: a sunset review and a duty-absorption review. The Court held that the duty-absorption statute—which authorizes Commerce to conduct duty-absorption reviews "if the subject merchandise is sold . . . through an importer who is affiliated with" a foreign exporter, 19 U.S.C. § 1675(a)(4)—unambiguously prohibits Commerce from conducting such reviews when a foreign exporter acts as its own importer because an affiliation relationship requires at least two parties. *Agro Dutch*, 508 F.3d at

22

1031-32. But the Court went on to hold that Commerce retains authority to consider duty-absorption issues in sunset reviews notwithstanding the fact that the sunset-review statute does not expressly grant Commerce the authority to do so and instead speaks in general terms. *Id.* at 1033; *see* 19 U.S.C. § 1675a(c)(2) (authorizing Commerce to "consider such other price, cost, market, or economic factors as it deems relevant" during the sunset review). That general provision, like Commerce's general rulemaking authority here, allows Commerce to formulate rational procedures for implementing the statute.

Finally, that the URAA provides for expedited reviews in the antidumping context, but not in the countervailing-duty context, does not alter the analysis. "The force of any negative implication . . . depends on context." *Marx v. General Revenue Corp.*, 568 U.S. 371, 381 (2013). The canon applies only when "circumstances support[] a sensible inference that the [provision] left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002). The context here suggests the opposite.

Here, Congress included a provision in the statute, 19 U.S.C. §1673e(c)(1)(C), suggesting that Commerce would perform expedited reviews in antidumping investigations. Commerce then issued a regulation laying out the specifics—a regulation that is substantially similar to the one on the CVD side. 19

C.F.R. §351.215.  Given the statement in the SAA that a company "not actually investigated for reasons other than a refusal to cooperate[] shall be entitled to an expedited review to establish an individual" rate of duty "for that exporter[]" SAA, 1994 U.S.C.C.A.N. at 4250, it is not reasonable to conclude Congress meant to exclude CVD expedited reviews but include antidumping expedited reviews. *Cf. Albemarle*, 821 F.3d at 1352 (recognizing that Commerce's all-others methodology could be used outside the context of investigations).

## II.    Commerce's Interpretation Of Article 19.3 Of The SCM Agreement Is Correct

In the final rule, Commerce stated that it had promulgated section 351.214(k) of its regulations in accordance with Article 19.3, which "requires expedited reviews for exporters that were not 'actually investigated' in a [countervailing duty] investigation."  62 Fed. Reg. at 27,322.  This interpretation is correct in light of the clear directive in the SAA that expedited reviews be provided.  *See* 19 U.S.C. § 3512(d) (explaining that the SAA "shall be regarded as an authoritative expression . . . concerning the interpretation and application of the [SCM Agreement]").  The SAA itself restates the requirement in Article 19.3 of the SCM Agreement, that an "exporter . . . subject" to a countervailing-duty order that "was not actually investigated for reasons other than a refusal to cooperate[]

24

shall be entitled to an expedited review to establish an individual" rate of duty "for that exporter."  SAA, 1994 U.S.C.C.A.N. at 4250.

Even if Commerce's 1997 interpretation was incomplete (because the exporter must have been not investigated "for reasons other than a refusal to cooperate" and the exporter's products must be "subject to a definitive countervailing duty"), it was nevertheless substantially correct.  The interpretation was given in the context of responding to comments on Commerce's proposed regulation, and those additional requirements were immaterial to the relevant comment and Commerce's response.  62 Fed. Reg. at 27,322.

Of course, the SCM (and all of the Uruguay Round Agreements) is not self-executing, 19 U.S.C. § 2903(a)(1), and does not independently confer rulemaking authority to Commerce.  As the trial court observed, "interpreting the text and requirements of Article 19.3 is beyond the scope of this litigation."  *COALITION I*, 483 F. Supp. 2d at 1268; *see also Corus Staal BV v. Dep't of Commerce*, 395 F.3d 1343, 1348-49 (Fed. Cir. 2005) (explaining that international agreements cannot "trump[ ]" domestic legislation).  Thus, the validity of section 351.214(k) does not depend on its consistency with Article 19.3 of the SCM Agreement, but rather whether it is authorized by domestic law.  As shown above, Commerce lawfully

promulgated the regulation pursuant to its general rulemaking authority under 19 U.S.C. § 3513(a)(2).

## CONCLUSION

For these reasons, we respectfully answer both of the Court's questions in the affirmative.

<div style="margin-left: 50%;">

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

/s/ Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Assistant Director

/s/ Elizabeth Anne Speck by /s/ Claudia Burke
ELIZABETH ANNE SPECK
Senior Trial Counsel
Department of Justice, Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-0369
Email: elizabeth.speck@usdoj.gov

</div>

OF COUNSEL:
NIKKI KALBING
Assistant Chief Counsel
Office of the Chief Counsel
   for Trade Enforcement
   & Compliance
U.S. Department of Commerce
Washington, DC 20230

February 7, 2023

Attorneys for Amicus Curiae

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's June 10, 2023 Order and Rule 32 of the Rules of this

Court 32(a)(7), I certify that the foregoing brief contains 5406 words, excluding

the parts of the brief exempted by the rule.  The brief complies with the typeface

requirements and type style requirements of Fed. R. App. P. 32(a)(5) and has been

prepared using Times New Roman 14-point font, a proportionally spaced typeface.

/s/  Claudia Burke